## BEADLE v. GILLINGHAM.

1. WITNESSES—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED —WAIVER OF STATUTORY BAR.
   The statute raising a bar to testimony by the opposite party as to matters equally within the knowledge of the deceased may be waived by a successor party in title having a pecuniary interest in the property involved (CL 1948, § 617.65).

2. SAME—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED— WAIVER—REBUTTAL—BOUNDARIES.
   Rebuttal testimony of officer of corporation as to boundary of land involved in boundary dispute was properly admitted notwithstanding it related to a matter equally within the knowledge of a defendant's father, now deceased, where defendant had waived the statutory bar by having testified as to father's efforts to familiarize defendant with the boundaries of the property (CL 1948, § 617.65).

3. EASEMENTS—LOCATION OF RIGHT-OF-WAY—EVIDENCE.
   Suit to establish location of a right-of-way over defendants' land, which latter had relocated in part because of condition of the land, is remanded for the taking of such additional proof as is necessary to establish a usable, practical right-of-way, consistent with the interest of both the plaintiffs and defendants, where evidence heretofore adduced was unsatisfactory.

4. NAVIGABLE WATERS—ACCRETION.
   Trial court's determination that line drawn due west from point established by the court on boundary as proved by plaintiffs was the proper dividing line as to land formed by accretion *held*, proper under record presented in boundary dispute.

---

* Continued from Volume 347.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2]  58 Am Jur, Witnesses § 355 *et seq.*
[3]  17 Am Jur, Easements, §§ 87, 88.
[4]  56 Am Jur, Waters § 477.
[5]  14 Am Jur, Costs § 11.

5. COSTS—FAILURE OF EITHER PARTY TO PREVAIL.
  No costs are allowed in suit to establish boundary, location of
    right-of-way and to determine title to land formed by ac-
    cretion, where neither party has fully prevailed.

Appeal from Huron; Bach (Arthur M.), J. Sub-
mitted January 11, 1957. (Docket No. 45, Calendar
No. 47,055.) Decided February 28, 1957.

Bill by George D. Beadle and Adeline B. Beadle
against Robert J. Gillingham and Mabel M. Gilling-
ham and others to quiet title, establish boundary
lines, determine rights of accretion, and establish
correct description of right-of-way. Decree for
plaintiffs. Defendants appeal. Affirmed in part and
remanded for more specific description of right-of-
way.

*Crane, Crane, Kessel & Deibel* (*Gilbert A. Deibel,*
of counsel), for plaintiffs.

*Frederick S. Beach,* for defendants Gillingham.

KELLY, J. Plaintiffs filed a bill to quiet title, seek-
ing determination of the boundary line between their
property and that of defendants, and to establish
defendants' right-of-way over plaintiffs' land.

The dispute resulted from 2 different descriptions
of the land conveyed to plaintiffs in 1950 by the
Second National Bank of Saginaw. Plaintiffs con-
tend one description should prevail and defendants
insist upon the other.

The trial court's opinion as to where the boundary
line should be established was based upon a survey
made in 1931 when defendants' property was owned
by defendant Robert J. Gillingham's father and
plaintiffs' property was owned by the Saginaw Bay
Fish Company.

Both parties agree as to a common point designated as "A", which should be used in determining the boundary line.    Plaintiffs and defendants differ as to how the line should be extended in a northerly and easterly direction to points "F" or "D".    Defendants contend that said line should run in a diagonal direction north 33 degrees, 23 minutes east, for the 632.2 feet between "A" and "D".    Plaintiffs contend that the line should first be extended to a point "B" north 18 degrees, 19 minutes east, for 288.1 feet, and thence north 45 degrees, 17 minutes east, for a distance of 362.8 feet to point "F".    "F" was a square monument made of cement and stone and "D" was a concrete block with an iron in the center.    Defendant Gillingham testified that in his opinion monument "D" is not in the same place as originally constructed as ice and snow have moved it down towards the mouth of the Pigeon river.    At the time of trial monuments "F" and "D" were 8 feet apart.

Plaintiffs introduced proof by Mr. Dufty, an officer of the Saginaw Bay Fish Company, the owner of plaintiffs' property in 1931, in regard to the establishment of point "B".    Defendants do not challenge the truthfulness of Mr. Dufty's testimony, but contend that his testimony should have been excluded because it was equally within the knowledge of their deceased predecessor in title (defendant Gillingham's father) and, therefore, objectionable under the "dead man's" statute.*

An examination of this record convinces this Court that the boundary line as established by the trial court, extending from point "A" to point "B" and then to point "F" was the correct boundary line, if the proof offered by Mr. Dufty was properly received.    We shall, therefore, first consider appellants' and appellees' contentions in this regard.

---

* CL 1948, § 617.65 (Stat Ann § 27.914).—REPORTER.

Mr. Dufty was employed by the Saginaw Bay Fish Company in 1910 and became vice-president and manager of the company in 1919, holding that position until the company's dissolution in 1948. He was familiar with the property in question from 1919 onward. In 1931 the Saginaw Bay Fish Company determined that it would ascertain the true boundary of the company's holdings and employed a registered surveyor, Mr. Chapin. Mr. Dufty testified how he and others, including defendant's father and predecessor in title, accompanied Mr. Chapin and assisted him in said survey. His testimony in regard to marker "B" is as follows:

"*Q.* While you were putting this monument in did you later on that day see Mr. Chapin and Mr. Gillingham, Sr.?

"*A.* I seen them here.

"*Q.* Where is 'here?'

"*A.* At 'B.'

"*Q.* And what did you see them doing?

"*A.* We seen them digging a hole to put in a cement abutment, which was to be a marker.

"*Q.* You saw Mr. Chapin and Mr. Gillingham, Sr., digging a hole at 'B?'

"*A.* Yes.

"*Q.* And they put in a concrete monument?

"*A.* Yes.

"*Q.* And that monument is there today?

"*A.* It was there the other day. It was there since 1932."

Mr. Dufty's testimony, above referred to, was introduced in rebuttal to defendant Gillingham's testimony. The court sustained defendants' objection to Dufty's testimony when he was placed on the stand by plaintiffs. Subsequently, defendant testified on direct examination that he received the deed to the property from his father and that "my father walked this property with me, if I may say it, to familiarize

me with it." Sustaining defendants' contention that
the lot line should be established between "A" to "D"
rather than from "A" to "B" to "F" as plaintiffs con-
tend, defendant Gillingham testified on direct exam-
ination in regard to monument "B" as follows:

"*Q.* Do you know how 'B' came to be there? Did
you have anything to do with it?
"*A.* No.
"*Q.* Do you know who built it?
"*A.* No, just as I mentioned before by my father."

The court in its opinion commented upon the pro-
priety of allowing Mr. Dufty's testimony, as follows:

"The court originally rejected certain portions of
the testimony of witness Dufty, then on rebuttal al-
lowed the testimony in evidence on the theory that
defendant Gillingham waived his rights to the stat-
ute when he testified on direct examination that his
father (the dead man) showed him the boundary
lines. It is the court's opinion that defendant Gil-
lingham by testifying that he walked the property
with his father, the deceased person, 2 or 3 times
waived his privilege of not having witness Dufty tes-
tify as to what he saw the deceased person do relative
to the boundary lines."

This Court in *Rock* v. *Gannon Grocery Co.*, 246
Mich 545, 551, held:

"The statute is a shield and not a sword. Death
having sealed the lips of one, the statute closes the
lips of the other, except in contradiction of testimony
given by witnesses having a pecuniary interest in
the recovery. The statute recognizes a condition oc-
casioned by death and establishes equality between
the living in interest, but does not permit the living,
in behalf of their pecuniary interest, to advance a
sword from behind the shield and forbid its parry.
It has long been held that the statute may be waived.
It is manifestly unfair to permit those having a
pecuniary interest in the suit to testify to matters

equally within the knowledge of the deceased and to deny the opposite party the right to contradict or be heard with reference to such testimony."

The court did not err in allowing Mr. Dufty's testimony in rebuttal to defendant Gillingham's testimony.

Plaintiffs in their bill of complaint alleged that defendants had a right-of-way over their property but "that since plaintiffs purchased the property in 1950 defendant Robert J. Gillingham has taken it upon himself to relocate a portion of this road to the east of the route that for many, many years the road took." Defendants in their answer and by the testimony of defendant Gillingham admit this allegation, but justify the relocation by stating that the condition of the land required them to do so and that they utilized an abandoned railroad track. From the record submitted to this Court it does not appear the plaintiffs refuted this claim of defendants. Plaintiffs inferentially admitted some relocation was required by stating they would be willing to pay for the expense of relocating the right-of-way if such could be decided without interference with their shore-line property on Pigeon river.

The opinion of the trial court granting plaintiffs' request that the right-of-way which has been used for years in the past be determined as the right-of-way for the future, indicates that the trial court made such determination because of the unsatisfactory proof offered as to where such right-of-way should be established.

Defendants have an admitted definite right-of-way over plaintiffs' land and this right is not established by adverse possession or use in the past. This case is remanded to the trial court for the sole purpose of taking whatever additional proof is necessary to establish a usable, practical right-of-way, consistent

with the interest of both the plaintiffs and the defendants.

In dealing with the question of accretion, the court stated:

"Both parties are asking that some disposition be made of the accretion. Since both parties suggest a division of the property by accretion and point 'B' was found by the court to be the boundary line, the court will determine that a line be drawn due west from point 'B', and that be the dividing line between the parties."

We agree with the decision of the trial court in regard to accretion.

Additional errors claimed by defendants are without merit.

The decree of the lower court in regard to the boundary line and accretion is affirmed, and the case is remanded to the trial court for the purpose of determining the right-of-way. Affirmed in part and remanded. No costs, neither party having fully prevailed.

DETHMERS, C. J., and SHARPE, SMITH, EDWARDS, VOELKER, and BLACK, JJ., concurred.

CARR, J., did not sit.